1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF WASHINGTON
7

8    SIMON RAMIREZ,                          No. 1:15-CV-03035-JTR
9
            Plaintiff,                       ORDER GRANTING, IN PART,
10                                           PLAINTIFF'S MOTION FOR
11          v.                               SUMMARY JUDGMENT
12   CAROLYN W. COLVIN,
13   Commissioner of Social Security,
14
            Defendant.
15

16      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

17   No. 14, 17.  Attorney D. James Tree represents Simon Ramirez (Plaintiff); Special

18   Assistant United States Attorney Erin F. Highland represents the Commissioner of

19   Social Security (Defendant).  The parties have consented to proceed before a

20   magistrate judge.  ECF No. 7.  After reviewing the administrative record and the

21   briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for

22   Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and

23   **REMANDS** the matter to the Commissioner for additional proceedings pursuant to

24   42 U.S.C. § 405(g).

25                          **JURISDICTION**

26      Plaintiff filed applications for Supplemental Security Income (SSI) and

27   Disability Insurance Benefits (DIB) on July 12, 2011, alleging disability since July

28   1, 2008, due to bilateral knee pain, knee injury, arthritis, bursitis in the right elbow,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

bleeding ulcers, and gastroesophageal reflux disease (GERD).  Tr. 217-230, 263, 267.  The applications were denied initially and upon reconsideration.  Tr. 126-134, 137-150.  Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on August 14, 2013, at which Plaintiff, represented by counsel, and vocational expert, Trevor Duncan, testified.  Tr. 42-71.  The ALJ issued an unfavorable decision on September 13, 2013.  Tr. 23-36.  The Appeals Council denied review on January 2, 2015.  Tr. 1-7.  The ALJ's September 13, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on February 26, 2015.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 43 years old at the alleged date of onset.  Tr. 217.  Plaintiff completed his GED in 1986.  Tr. 268.  Plaintiff has past work as a cook, material handler, salesperson, and fast food manager.  Tr. 66, 283-293.  Plaintiff reported that he stopped working on July 1, 2008, because of his condition.  Tr. 267.

Upon the initial denial and reconsideration denial, Tara McBride, Single Decisionmaker[1] and Eugene Kester, M.D., found Plaintiff was limited to

_____

[1]A Single Decisionmaker Model is a disability determination prototype that was being tested in the State of Washington at the time of Plaintiff's initial and reconsideration determinations.  *See* POMS DI 12015.100.  A Single Decisionmaker is separate from a medical consultant (MC) or a psychological consultant (PC) and has the authority to complete all disability determination forms and make initial disability determinations in many cases without a MC or a PC.  *Id*. In an unpublished decision, the Ninth Circuit has held that it is error for an ALJ to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, sanding/walking a total of two hours, and sitting a total of six hours.  Tr. 78, 87, 102, 117.  Disability adjudicators, Ms. McBride and Laurie Baltutat characterized the maximum sustained work capability as sedentary.  Tr. 81, 90, 107, 122.

On April 11, 2011, Fady Sabry, M.D., opined Plaintiff could stand for two hours in an eight-hour work day, sit for five hours in an eight-hour work day, lift twenty pounds occasionally, and lift ten pounds frequently.  Tr. 319.  On December 16, 2011, Jesse McClelland, M.D., completed a psychological consultative examination.  Dr. McClelland reviewed medical clinic notes, a copy of Form SSA 3441, and a copy of the SSA Function Report and completed a Mental Status Examination.  Tr. 448, 450-451.  Dr. McClelland diagnosed Plaintiff with Attention deficit, hyperactive disorder (ADHD), posttraumatic stress disorder (PTSD), and a rule out diagnosis of major depressive disorder.  Tr. 451.  Dr. McClelland opined that Plaintiff should not manage his own funds, he should be able to perform simple and repetitive tasks, he should be able to perform detailed and complex tasks, he should be able to accept instructions from supervisors, he should be able to perform work activities on a consistent bases without special or additional instruction, he would likely struggle with interacting with coworkers and the public, he would likely have difficulty maintaining regular attendance in the workplace, he may have interruptions to the normal workday from panic attacks, and he may struggle to deal with the usual stress encountered in the workplace.  Tr. 451-452.  On March 16, 2013, Brent Packer, M.D., a Department of Social and Health Services (DSHS) evaluator reviewed records form Orthopedics Northwest and opined that Plaintiff's rating of sedentary work was supported by the records.

_____

accord substantial weight to the opinion of a non-physician Single Decisionmaker.  *Morgan v. Colvin*, 531 F. App'x 793 (9th Cir. June 21, 2013).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

Tr. 550.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments

prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 13, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 1, 2008, the alleged date of onset. Tr. 25.

At step two, the ALJ determined Plaintiff had the following severe impairments: reconstructive surgery of a weight-bearing joint, osteoarthritis, and anxiety disorder. Tr. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 26-28.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform a range of light work:

> [E]xcept he can occasionally lift twenty pounds and can frequently lift ten pounds. He can stand and/or walk for two hours in an eight-hour workday with normal and customary breaks. He can sit for six hours in an eight-hour workday with normal and customary breaks. He can occasionally operate foot controls. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can frequently balance and stoop. He can occasionally crouch. He can never kneel or crawl. He is limited to jobs that can be performed while using a hand-held assistive device for uneven terrain or prolonged

ambulation.  He should avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards such as dangerous machinery and unprotected heights.  He is limited to relatively simple work, and well learned tasks with only superficial contact with the public.

Tr. 28.  The ALJ concluded that Plaintiff was not able to perform his past relevant work, which included the occupations of cook, material handler, salesperson (hardware), and fast food manager.  Tr. 34.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of assembler, cashier II, and ticket taker. Tr. 35.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 1, 2008, the alleged date of onset, through the date of the ALJ's decision, September 13, 2013.  *Id.*

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly consider Plaintiff's testimony about the severity of his symptoms; (2) failing to consider Plaintiff's ability to ambulate effectively under Listings 1.02 and 1.03; (3) failing to accord proper weight to the opinions of Dr. Sabry, State Agency Reviewers, and Dr. McClelland; and (4) failing to consider Plaintiff's use of assistance devices in the residual functional capacity determination.

**DISCUSSION**

**A.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 14 at 16-21.

It is generally the province of the ALJ to make credibility determinations,

*Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff not fully credible concerning the intensity, persistence, and limiting effects of his symptoms.  Tr. 29.  The ALJ reasoned that Plaintiff was less than fully credible because his symptom reporting was (1) inconsistent with his activities of daily living; (2) inconsistent with the medical evidence; (3) inconsistent with the lack of medical treatment; (4) inconsistent with his work activity; and (5) undermined by his criminal history.

## 1.    Activities of Daily Living

The ALJ's first reason for finding Plaintiff less than credible, that Plaintiff's ability to accomplish his daily activities "indicates that he is likely capable of sustaining some sort of employment within appropriate limitations," Tr. 29, is not a specific, clear and convincing reason to undermine Plaintiff's credibility.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for

benefits. *Fair*, 885 F.2d at 603.

The ALJ noted Plaintiff reported being able to tend to his personal care and grooming without reminders, prepare his own meals, wash dishes, vacuum, dust, water plants, shop for groceries, use public transportation, attend church, read novels, and play cards. Tr. 29. The ALJ found:

> In short, the claimant is able to tend to his daily needs without assistance. He engages in some physically exertional tasks such as cooking, housework, yard work, and grocery shopping. He is also able to leave his house regularly. The claimant's ability to accomplish all of these daily activities without substantial assistance indicates that he is likely capable of sustaining some sort of employment within appropriate limitations.

*Id*. Here, the ALJ's determinations that these skills transfer to full time work is not specific enough under *Orn*. The activities described by the ALJ are typical home activities. "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. As such, this is not a specific, clear and convincing reason to find Plaintiff less than fully credible.

## 2.    Medical Evidence

The ALJ's second reason for finding Plaintiff less than credible, that Plaintiff's symptoms are not supported by objective medical evidence, Tr. 30-31, is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

First, the ALJ concluded that despite Plaintiff's extensive history of left knee surgeries and reported pain, he reported to Ismael Vargas, PA-C, that he did not require an assistance device to get around. Tr. 30. This is not an accurate

reflection of the record.  PA-C Vargas stated "[h]e does not use a cane."  Tr. 395.
PA-C Vargas then instructs Plaintiff to begin using an assistance device while
ambulating.  Tr. 398.  There is a difference between Plaintiff stating he does not
need a cane and Plaintiff stating he does not use a cane.  As such, this does not
support the unfavorable credibility determination.

Second, the ALJ summarized Plaintiff's testimony, summarized Plaintiff's
physical medical records and found that "the physical medical records do not
support the degree of limitation that the claimant is alleging.  Though the records
show that the claimant does have some problems pertaining to his left knee, he is
still able to accomplish his daily activities, and can get around as needed."  Tr. 31.
This determination does not meet the specificity requirements set forth in *Lester*.
81 F.3d at 834 ("General findings are insufficient:  rather the ALJ must identify
what testimony is not credible and what evidence undermines the claimant's
complaints.").  Considering the majority of the ALJ's other reasons for finding
Plaintiff less than fully credible are not legally sufficient, even if the physical
records do not support Plaintiff's alleged severity of symptoms, this reason alone is
not sufficient to support the ALJ's determination.

### 3.    Lack of Treatment

The ALJ finds that Plaintiff's lack of treatment regarding his knee from mid-
2011 through 2012, and his lack of treatment regarding his mental health
impairments, undermine Plaintiff's credibility.  Tr. 30-31.  Noncompliance with
medical care or unexplained or inadequately explained reasons for failing to seek
medical treatment casts doubt on a claimant's subjective complaints.  20 C.F.R. §§
404.1530, 416.930; *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th
Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain
testimony was supported by the fact that claimant was not taking pain medication).
Social Security Ruling 96-7p states that:

[T]he adjudicator must not draw any inferences about an individual's

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

1
2

symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*See also Orn*, 495 F.3d at 638 (the ALJ erred by failing to discuss the claimant's testimony that he could not afford treatment and finding that lack of treatment supported an unfavorable credibility determination).

In her decision, the ALJ fails to address any reason Plaintiff did not seek medical treatment. Tr. 30-31. The Court recognizes that S.S.R. 96-7p states that an adjudicator "may need to recontact the individual" to determine whether there are good reasons the claimant did not seek medical treatment, but does not view S.S.R. 96-7p as creating an affirmative duty on the ALJ to ask such a question when the Plaintiff did not provide a reason or the case record did not support a reason as to why a claimant failed to seek treatment.

Here, there is evidence in the record that Plaintiff had limited financial means. Tr. 449 (Dr. McClelland stated "[t]he claimant currently lives in Yakima, Washington, with his mother and gets no financial support"); Tr. 319-320, 535-540, 545-550, (DSHS evaluations showing that Plaintiff was applying for state assistance). Thus, the ALJ was required to consider this evidence prior to determining that Plaintiff's lack of treatment supported an unfavorable credibility determination. If the ALJ viewed the evidence as inadequate or ambiguous, then the ALJ's duty to develop the record under *Mayes v. Massanari* would have been triggered and the ALJ would then be required to recontact Plaintiff to clarify. *See* 276 F.3d 453, 459-460 (9th Cir. 2001). Since the ALJ failed to address any reason Plaintiff did not seek medical treatment, this is not a specific, clear and convincing reason to find Plaintiff less than fully credible.

**4.    Work Activity**

The ALJ found that Plaintiff's work from May to June of 2010 showed that

he was not as physically limited as alleged.  Tr. 32.

Plaintiff reported to George S. Liu, M.D., that he had tried to work from May through June of 2010 performing maintenance on irrigation systems, but he had to stop work due to his knee.  Tr. 431.  On Plaintiff's Work History Report, he reported working from May through June of 2010 performing general maintenance repair, completing work repair orders, and completing lawn maintenance.  Tr. 283, 292.  He stated the work required walking for five hours, standing for seven hours, and lifting fifty pounds frequently.  Tr. 292.  The ALJ determined that if Plaintiff's impairments were "as limiting as he is now suggesting, it would stand to reason that he would not have performed such exertionally challenging work."  Tr. 32. Defendant cites *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) as asserting that a claimant's employment and seeking work while allegedly disabled are proper grounds for discounting the claimant's testimony.  ECF No. 17 at 17.  In *Bray*, the claimant had been working for two years and continued to look for work after her job ended.  *Id*.  This is in contrast to Plaintiff who attempted working for two months and had to stop due to knee pain.  Tr. 431.  The two cases are not analogues, and the ALJ's determination is not supported by established law.  The Ninth Circuit has held that the fact that a claimant "tried to work for a short period of time and, because of his impairments, failed," should not be used to discredit the claimant.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-1039 (9th Cir. 2007).  In fact, evidence that a claimant tried to work and failed may support the claimant's allegations of disabling pain.  *Id*. at 1038.  As such, this reason does not support the ALJ's unfavorable credibility determination.

### 5.    Criminal Activities

The ALJ found that Plaintiff's various criminal activities detract from his overall credibility.  Tr. 32.  The ALJ noted that Plaintiff was convicted of a felony sexual assault charge, admitted to using methamphetamine and marijuana, admitted to abusing prescription medication, spent time in jail for various minor

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

offenses, and was arrested for shoplifting. *Id.*

An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility. *Smolen*, 80 F.3d at 1284; see also *Hardisty v. Astrue*, 592 F.3d 1072, 1080 (9th Cir. 2010) (in ruling on an Equal Access to Justice Act request, the Court determined the ALJ's credibility determination was substantially justified when it was based, among other factors, on the claimant's prior criminal convictions); *see also Carter v. Astrue*, 472 F. App'x 550, 552 (2012 WL 937988) (a claimant's prior conviction for welfare fraud "casts doubt on [his] motivation to truthfully report"); *see also Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (the ALJ may consider a claimant's reputation for truthfulness, including any convictions for crimes involving dishonesty or moral turpitude).

Dr. McClelland reported that Plaintiff "has been arrested once for shoplifting, but also spent time in prison between 2004 and 2009. We did not discuss what caused him to go to prison." Tr. 449. At the hearing, Plaintiff testified that he spent time in prison for "a statutory sexual assault." Tr. 50. He further testified that he spent some time in jail for fines, but never had any incarcerations related to drugs. Tr. 50-51. He further testified that the positive drug test in the record showing the presences of methamphetamines and marijuana represented a onetime use where Plaintiff "was in the wrong place at the wrong time." Tr. 58-59.

As for the sexual assault, Plaintiff argues that the crime of assault is not a crime of moral turpitude and cites to *Albidrez*, as support. ECF No. 18 at 9. The Court in *Albidrez*, held that "mere assault convictions are not a proper basis for the ALJ's adverse credibility finding." 504 F. Supp. 2d at 822. Here Plaintiff was not convicted of a mere assault, he testified that he was convicted of a statutory sexual assault. Tr. 50. The Ninth Circuit has held that the generic definition of "moral turpitude" are crimes that involve either fraud or "base, vile, and depraved" conduct that "shock[s] the public conscience." *Nunez v. Holder*, 594 F.3d 1124,

1131 (9th Cir. 2010); *See also Coats v. Colvin*, No. 1:14-CV-00712-JLT, 2015 WL 5813333, at 17 (E.D. Cal. Sept. 30, 2015) (lewd acts on a minor were held to be a crime of moral turpitude and acceptable to support an unfavorable credibility determination). Here, considering the assault was sexual in nature, it falls under the umbrella of crime of moral turpitude and can be considered a specific, clear and convincing reason to find Plaintiff less than fully credible.

Next, the ALJ's reliance on Plaintiff history of drug use and jail time for unspecified offences is not sufficient to support an unfavorable credibility determination. While an ALJ may properly consider evidence of a claimant's substance use in assessing credibility, the Ninth Circuit has generally held that a Plaintiff's inconsistent statements regarding drug use supports an unfavorable decision. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding). Here, the ALJ did not find Plaintiff's statements regarding his drug use were inconsistent, but simply found that based on Plaintiff's history of engaging in the criminal activity of using drugs, he was not credible. As such, this is not sufficient to support an unfavorable credibility determination.

Finally, an arrest without evidence of a conviction is not enough to support an unfavorable credibility determine. In *Hardisty*, the Ninth Circuit specifically found it was reasonable to base an adverse credibility finding around criminal *convictions*, not merely arrests. 592 F.3d at 1080.

As such, the ALJ's reliance on Plaintiff's conviction for statutory sexual assault is a clear and convincing reason to support an adverse credibility determination, but her reliance on Plaintiff's drug use and arrest for shoplifting is not.

Considering the ALJ's numerous errors in the credibility determination, this case must be remanded for a new hearing.  At such a hearing, the ALJ will make a new credibility determination.

**B.   The Ability to Ambulate Effectively**

Plaintiff asserts that the ALJ failed to properly consider listings 1.02 and 1.03 because the ALJ did not properly address Plaintiff's ability to ambulate effectively.  ECF No. 14 at 6-8.  Conditions contained in the "Listing of Impairments" are considered so severe that they are irrefutably presumed disabling without any specific finding as to a claimant's ability to perform his past relevant work or any other jobs.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant is conclusively disabled if his condition either meets or equals a listed impairment. *Id*.  A claimant must show more than a mere diagnosis of a listed impairment; he must show that he has a "medically determinable" impairment or impairments that satisfy all of the criteria in the applicable listing.  20 C.F.R. §§ 404.1525(d); 416.925(d); *Key v. Heckler*, 754 F.2d 1545, 1549-1550 (9th Cir. 1985).

Listing 1.02, titled "Major dysfunction of a joint(s) (due to any cause)" is met by showing the following:

> [A] gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.  Similarly, Listing 1.03 is met by showing claimant underwent "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b,

and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id*. The inability to ambulate effectively is defined as:

> [A]n extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation

*Id*.

The Ninth Circuit has held that "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990). A mere statement that a claimant does not equal the listing is insufficient. *See Id*.

In *Marcia*, for example, the claimant identified evidence to establish equivalency of his impairments or a combination of his impairments to a particular listed impairment. 900 F.2d at 176. The ALJ made the following finding as to equivalence: "The claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings to Subpart P of

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

1   Regulation 4 or the duration of the requirements Act." *Id*. at 176.  The Ninth

2   Circuit found this explanation insufficient and remanded the matter to the

3   Secretary for proper consideration of step three evidence.  *Id*.

4          Here, the ALJ set forth the requirements of Listing 1.02 and then concluded

5   that "the evidence does not demonstrate that the claimant has the degree of

6   difficulty in ambulating as defined in 1.00B2b."  Tr. 26-27.  The ALJ cited no

7   medical authority to support her conclusion.  There was no discussion on how

8   Plaintiff's alleged knee impairment failed to meet or equal either of the listed

9   impairments.  Additionally, the ALJ failed to consider Listing 1.03.

10          Defendant contends that the ALJ discussed Plaintiff's ability to ambulate

11  effectively at length later in the decision when she discussed Plaintiff's activities of

12  daily living.  ECF No. 17 at 5.  While the ALJ did address Plaintiff's ability to

13  clean his home, grocery shop, and use public transportation, she did not address

14  Plaintiff's ability to ambulate effectively.  Tr. 29.  The Code of Federal

15  Regulations does use the inability to grocery shop and use public transportation as

16  examples of ineffective ambulation.  It also states that this is not an exhaustive list

17  of examples of ineffective ambulation.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  As

18  such, the ALJ must specifically address the ability to ambulate effectively on

19  remand.

20  **C.     Evaluation of Medical Evidence**

21          Plaintiff argues the ALJ failed to properly consider and weigh the medical

22  opinions expressed by Fady Sabry, M.D., and other state agency opinions

23  regarding Plaintiff's physical limitations and the opinion expressed by Jesse

24  McClelland, M.D., regarding Plaintiff's mental limitations.  ECF No. 14 at 8-16.

25          In weighing medical source opinions, the ALJ should distinguish between

26  three different types of physicians: (1) treating physicians, who actually treat the

27  claimant; (2) examining physicians, who examine but do not treat the claimant;

28  and, (3) nonexamining physicians who neither treat nor examine the claimant.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

*Lester*, 81 F.2d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at 631.  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician.  *Id.* at 830-831.

### 1.    Fady Sabry, M.D.

On April 11, 2011, Dr. Sabry opined Plaintiff could stand for two hours in an eight-hour work day, sit for five hours in an eight-hour work day, lift twenty pounds occasionally, and lift ten pounds frequently.  Tr. 319.  Prior to providing his opinion, Dr. Sabry examined Plaintiff and stated he would review the May 19, 2010, MRI of Plaintiff's knee.  Tr. 399-400, 424.  The ALJ gave great weight to Dr. Sabry's opinion that Plaintiff could stand for two hours in an eight-hour workday, lift twenty pounds occasionally, and lift ten pounds frequently, but gave less weight to his opinion that Plaintiff could sit for only five hours in an eight-hour workday.  Tr. 32.  The ALJ found that Dr. Sabry gave no explanation for this degree of limitation and it appeared inconsistent with Plaintiff's physical evaluations and activities of daily living.  *Id*.

The Ninth Circuit has found that in order to meet the specific and legitimate

standard "[t]he ALJ must do more than offer [her] conclusions.  [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).  Here, the ALJ simply concluded that Dr. Sabry's opinion was inconsistent with physical evaluations and activities of daily living.  The ALJ did not set forth her own interpretations and an explanation as to why her opinion, rather than Dr. Sabry's, was correct.  As such, the ALJ failed to give legally sufficient reasons for the weight given to Dr. Sabry's opinion that Plaintiff could sit for only five hours in an eight-hour workday.  The ALJ is to address the weight given to Dr. Sabry's opinion on remand.

### 2.    State Agency Reviewers

Plaintiff asserts that the ALJ failed erred in limiting Plaintiff to light work when the other State Agency reviewers limited Plaintiff to sedentary work.  ECF No. 14 at 10-12.

On March 16, 2013, Dr. Packer reviewed records from Orthopedics Northwest and limited Plaintiff to sedentary work.  Tr. 550.  The ALJ gave some weight to Dr. Packer's opinion, finding that he had already made an accommodation for Plaintiff's knees in the residual functional capacity determination.  Tr. 33.  Considering the ALJ is to readdress Plaintiff's credibly on remand and a new credibility determination may result in a new residual functional capacity determination, the ALJ is instructed to readdress the weight given to Dr. Packer's if a new residual functional capacity determination is necessary.

Plaintiff also asserts that residual functional capacity determinations performed upon Plaintiff's initial application and reconsideration limited Plaintiff to sedentary work.  ECF No. 14 at 11.  But a review of these opinions show that they match the ALJ's residual functional capacity determination in lifting, carrying, standing, walking, and sitting.  Tr. 78, 87, 102, 117.  Therefore, Plaintiff's assertion that the ALJ erred in limiting Plaintiff to light work instead of

sedentary work is without merit.  The opinions at the initial denial and reconsideration based the limitation to sedentary work on standing/walking and sitting limitations in their narrative residual functional capacity determinations, while the ALJ based the limitation to light work on the lifting/carrying limitations in her narrative residual functional capacity determination.  The narrative residual functional capacity determinations are the same on these exertional limitations.

### 3.    Jesse McClelland, M.D.

Plaintiff challenges the weight given to Dr. McClelland's December 16, 2011, evaluation.  ECF No. 14 at 13-16.  The ALJ gave Dr. McClelland's opinion little weight because the doctor relied on Plaintiff's undiagnosed impairment of attention deficit hyperactivity disorder (ADHD), the doctor relied on Plaintiff's self-reports, and the findings are inconsistent with mental status exam.  Tr. 33. Once again, because the ALJ is instructed to readdress credibility upon remand and the ALJ rejected Dr. McClelland's opinion based on the doctor's reliance on Plaintiff's testimony, the ALJ is to readdress the weight given to Dr. McClelland's opinion upon remand if a new residual functional capacity determination is necessary.

### D.    Use of Assistance Devices

Plaintiff argues that the ALJ failed to fully account for Plaintiff's use of assistance devices.  ECF No. 14 at 12-13.  Because the ALJ is already directed to readdress the ability to ambulate effectively upon remand, the ALJ is also instructed to address Plaintiff's use of assistance devices in a new residual functional capacity determination  if a step four determination is necessary.

### REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings,

or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990).  *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Further proceedings are necessary for the ALJ to determine Plaintiff's credibility regarding his symptom reporting and his ability to ambulate effectively.  If a new step four determination is necessary, the ALJ is to form a new residual functional capacity determination addressing the medical source opinions and Plaintiff's use of assistance devices.  Furthermore, the ALJ is instructed to elicit testimony from both physical and psychological medical experts and a vocational expert regarding any new step three, four, and five determinations.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.     Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED March 1, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE